IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                                    INDICTMENT

ANDREW E. FISHER                         3:19cr76/MCR

_____/

THE GRAND JURY CHARGES:

## COUNT ONE

### A. INTRODUCTION

At all times material to this Indictment:

1. TRICARE was a federally funded medical benefits program provided by the federal government to help pay for civilian medical care rendered to uniformed services personnel and their dependents, retired uniformed services personnel and their dependents, and dependents of deceased uniformed services personnel.

2. TRICARE was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that affected commerce, as that term is used in Title 18, United States Code, Section 1347.

Returned in open court pursuant to Rule 6(f)
Date: July 16, 2019
United States Magistrate Judge

3. TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician. Express Scripts, Inc. ("ESI") in St. Louis, Missouri, administered TRICARE's prescription drug benefits.

4. TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies. If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to ESI. ESI would then adjudicate the claim and reimburse the pharmacy. Payment for the prescription was either mailed in the form of a check or electronically sent to the pharmacy or a third party designated by the pharmacy. To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable state and federal laws, specifically including those addressing fraud, waste, and abuse.

5. In general, "compounding" is a practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. Florida Statutes, Section 465.003(18), defines compounding as "combining, mixing, or altering the ingredients of one or more drugs or products to

2

create another drug or product." The State of Florida regulates pharmacies located in the state. Compounded drugs are not required to be approved by the Food and Drug Administration ("FDA"). Therefore, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

6. Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction.

7. Physician Specialty Pharmacy LLC ("PSP") was a pharmacy registered in the State of Florida with a principal place of business in Pensacola, Florida. PSP was registered in the State of Florida as a limited liability company in or about May 2014. Defendant **ANDREW E. FISHER ("FISHER")** was the president and manager of PSP and a part-owner of PSP. **FISHER** was not a licensed pharmacist. PSP was not a network pharmacy with TRICARE. PSP had bank accounts ending in 6422 and 6810 at Gulf Coast Community Bank, for which **FISHER** had signature authority.

8. Burklow Pharmacy Inc. ("Burklow Pharmacy") was a pharmacy registered in the State of Florida with a principal place of business in Pace, Florida. Burklow Pharmacy was originally incorporated in Florida in or about May 1997.

Burklow Pharmacy had a national provider identification ("NPI") number. Burklow Pharmacy was a network pharmacy with TRICARE. Burklow Pharmacy had a bank account ending in 3070 at Pen Air Federal Credit Union and a bank account ending in 0310 at Gulf Coast Community Bank.

9. Jay Pharmacy of Jay Florida Inc. ("Jay Pharmacy") was a pharmacy registered in the State of Florida with a principal place of business in Jay, Florida. Jay Pharmacy was originally incorporated in Florida in or about April 1968. Jay Pharmacy had an NPI number. Jay Pharmacy was a network pharmacy with TRICARE. In or about February 2015, PSP purchased Jay Pharmacy.

10. Simply Surgical, Inc. ("Simply Surgical") was a corporation registered in the State of Georgia. Michael Scott Burton ("Burton") was the chief executive officer, the chief financial officer, and secretary of Simply Surgical. Burton was a marketing representative for PSP. Simply Surgical had bank accounts ending in 5721 and 2564 at Bank of America, for which Burton had sole signature authority.

11. Dr. J.A.T. was a medical doctor licensed by the State of Georgia and had medical practices in the State of Georgia. Dr. J.A.T. was authorized by the Drug Enforcement Administration ("DEA") to prescribe controlled substances and was assigned DEA registration number ending in 0568. Dr. J.A.T. had an NPI

number. Dr. J.A.T. employed Marie Ann Smith ("Smith") as a billing coordinator for his medical practices.

12. Brad T. Hodgson ("Hodgson") was employed by Dr. J.A.T. as an athletic trainer, although he was commonly referred to as Dr. J.A.T.'s physician assistant ("P.A."). However, Hodgson was not licensed as a P.A. in the State of Georgia. Hodgson did not have a DEA number and was not licensed to prescribe controlled or non-controlled substances.

## B. THE CHARGE

Between on or about October 23, 2014, and on or about December 16, 2015, in the Northern District of Florida and elsewhere, the defendant,

**ANDREW E. FISHER,**

did knowingly and willfully conspire, combine, confederate, and agree with Michael Scott Burton, Heather E. Pounds, Bradley E. Pounds, Marie Ann Smith, Brad T. Hodgson, and other persons to commit offenses against the United States, namely:

1. to execute a scheme to defraud a health care benefit program and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for

health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

2. to devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and to cause wire communications to be transmitted in interstate commerce for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343.

### C. MANNER AND MEANS

It was part of this conspiracy that:

1. In or around November 2013, Burton contacted Hodgson at one of Dr. J.A.T.'s medical offices in reference to writing prescriptions for compounded pain cream, scar cream, and wellness capsules. Burton and Hodgson agreed Hodgson would write prescriptions for compounded drugs for individuals whose names Burton and others provided. Thereafter, Burton contacted Smith and asked if she would assist in the process.

2. These prescriptions were purportedly signed by Dr. J.A.T. and bore Dr. J.A.T.'s DEA and NPI numbers, but were actually signed by Hodgson. Dr. J.A.T. did not authorize or sign the prescriptions Hodgson and Smith submitted and did not see or speak to any the individuals who were receiving the prescribed compounded medications. Further, the health care beneficiaries whose information

was submitted by Burton's representatives were not patients of Dr. J.A.T. or any other health care provider at Dr. J.A.T.'s medical offices. The prescriptions issued were not prescribed by an authorized health care provider and were not determined by a licensed physician to be medically necessary.

3. The compounding pharmacy to which Burton initially directed Hodgson to submit prescriptions began questioning the legitimacy of these prescriptions. In or around October 2014, Burton and **FISHER** agreed that Burton would work as a marketing representative for PSP, and Burton instructed Hodgson and Smith to submit prescriptions for compounded drugs to PSP instead. **FISHER** was aware that there was no legitimate doctor-patient relationship between Dr. J.A.T. and the individuals being prescribed compounded drugs, yet **FISHER** agreed PSP would fill those prescriptions, ship the drugs, and submit claims to TRICARE and other health care programs for reimbursement. **FISHER** agreed to pay Burton's company, Simply Surgical, approximately 50% of any insurance payment received for a prescription submitted by Burton or one of his representatives.

4. Burton recruited Bradley and Heather Pounds ("the Pounds") and others to be representatives for Simply Surgical. Hodgson and Smith provided blank patient demographic and insurance forms used at Dr. J.A.T.'s medical offices to Burton, who provided them to his representatives to use. The

7

representatives, including the Pounds, obtained and forwarded to Burton the personal identifying information and completed patient demographic and insurance forms of TRICARE and other health care program beneficiaries. Some of the representatives, including the Pounds, completed patient demographic and insurance forms for themselves and provided the forms to Burton. Smith also completed patient demographic and insurance forms for herself and her family members and e-mailed their forms and other information to Burton.

5. Following Burton's receipt of patient demographic and insurance forms from his representatives, Burton caused the information to be electronically provided to Hodgson and Smith and instructed them as to which compounded medications to write on the prescription. Burton and **FISHER** caused Hodgson and Smith to electronically send via fax or e-mail the forged prescriptions from one of Dr. J.A.T.'s medical offices in Georgia to PSP in Pensacola, Florida.

6. Following receipt of the forged prescriptions, employees of PSP manufactured compounded drugs, and then caused the drugs to be shipped to the respective health care beneficiaries. **FISHER** directed employees of PSP to use ingredient formulations of the compounded drugs that would maximize the eligible reimbursement PSP could bill to, and receive from, TRICARE and other health care benefit programs without regard to what was medically necessary for the health care beneficiary receiving the drug.

7. Because PSP was not a TRICARE network pharmacy, **FISHER** caused prescriptions for TRICARE beneficiaries to be billed through Burklow Pharmacy, Jay Pharmacy, and other TRICARE network pharmacies. **FISHER** caused claims to be submitted electronically in interstate commerce to ESI on behalf of TRICARE for the prescriptions, knowing the prescriptions had not been prescribed by an authorized health care provider and were issued for health care beneficiaries who were not patients of Dr. J.A.T. The claims were submitted using Dr. J.A.T.'s DEA number and the NPI numbers of Dr. J.A.T., Burklow Pharmacy, Jay Pharmacy, and other TRICARE network pharmacies.

8. ESI, on behalf of TRICARE and other health care benefit programs, processed and adjudicated the claims for the prescriptions. Payments for the prescriptions were then either wired to or deposited via check into the bank accounts of Burklow Pharmacy, Jay Pharmacy, other pharmacies, or designated third-party businesses used by said pharmacies to process claim payments. Following receipt of the payments, the TRICARE network pharmacy transferred a portion of the money it received to PSP per that pharmacy's agreement with PSP. **FISHER** then caused PSP to distribute commission payments to Burton and the other marketing representatives.

9. **FISHER** directed Burton, other representatives, and PSP employees to tell health care beneficiaries receiving compounded drugs that they did not need

to pay co-pays for the prescriptions and to ignore any bills for co-pays they received. **FISHER** further directed employees of PSP and Burklow Pharmacy to waive or otherwise not require patients to pay co-pays. **FISHER** was aware that failing to collect co-pays from TRICARE beneficiaries violated ESI's provider agreement.

10. By this conduct, **FISHER** and his co-conspirators defrauded TRICARE and other health care benefit programs of more than $4.8 million in fraudulent claims for compounded drug prescriptions.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### A. INTRODUCTION

The allegations contained in sections A and C of Count One of this Indictment are realleged and incorporated as if fully set forth herein.

### B. THE CHARGE

Between on or about December 10, 2014, and on or about November 20, 2015, in the Northern District of Florida and elsewhere, the defendant,

### ANDREW E. FISHER,

did knowingly and willfully combine, conspire, confederate, and agree with Michael Scott Burton and other persons to engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate

commerce, in criminally derived property of a value greater than $10,000, namely, the withdrawal, transfer, and deposit of funds and monetary instruments, that is, the transfer of funds from PSP's bank accounts to Simply Surgical's bank account, such property having been derived from a specified unlawful activity, to wit, conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Sections 1343, 1347, and 1349, as charged in Count One of this Indictment, all in violation of Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Section 1956(h).

## CRIMINAL FORFEITURE

The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From the defendant's engagement in the violations alleged in Counts One and Two of this Indictment, the defendant,

**ANDREW E. FISHER,**

shall forfeit to the United States of America:

(A) pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Sections 1343, 1347, and 1349, any and all of the defendant's right, title, and interest in any property, real and personal, constituting and derived from proceeds traceable to such offenses; and

(B) pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and 1957, any and all of the defendant's right, title, and interest in any property, real and personal, involved in such offenses, and any property traceable to such property.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    i. cannot be located upon the exercise of due diligence;

    ii. has been transferred or sold to, or deposited with, a third person;

    iii. has been placed beyond the jurisdiction of this Court;

    iv. has been substantially diminished in value; or

    v. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the property subject to forfeiture under the provisions of Title 21, United

States Code, Section 853(p), which is incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:

Redacted per privacy policy

FOREPERSON

07-16-2019
DATE

*/s/ Lawrence Keefe*
LAWRENCE KEEFE
United States Attorney

*/s/ Alicia H. Forbes*
ALICIA H. FORBES
Assistant United States Attorney

13